transactions. Accordingly, the Loan Documents meet the requirements for negotiability under Pennsylvania law, and constitute clear, binding financial obligations.

## CONCLUSION

For the reasons set forth in this memorandum opinion, Plaintiff's motion for summary judgment will be granted with respect to liability as to all Defendants except Nancy Popple. Judgment will be entered in Plaintiff's favor, and against all Defendants, except Nancy Popple, in the amount of $1,441,972.19,[8] plus any additional interest as to which Plaintiff is entitled, attorneys' fees as permitted under the Loan Documents, and costs of suit. Defendants shall further surrender all equipment listed in the Security Agreements to Plaintiff, and each Defendant, except Nancy Popple, shall further surrender all accounts receivable to Plaintiff in order to commence satisfaction of this judgment.

DATE: November 30, 2012

Robert D. Mariani
United States District Judge

---

[8] *See* Certification of Andrew Remias, ECF Dkt. 25-2, and its accompanying calculations, which were uncontroverted by any assertion of error, miscalculation, or other claim of inaccuracy. As recounted in the Remias Certification, the $1,441,972.19 comprises damages calculated up to, and including, February 2, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PEOPLE'S UNITED EQUIPMENT FINANCE CORP. f/k/a FINANCIAL FEDERAL CREDIT, INC. | : : : : |
| Plaintiff | : : |
| v. | : 3:11-cv-0771 : (JUDGE MARIANI) |
| NAPCON, INC., et al. | : : |
| Defendants | : |

## MEMORANDUM OPINION

This matter arises upon the Complaint of Plaintiff People's United Equipment

Finance Corp. ("Plaintiff") against Defendants Napcon, Inc., Napcon Enterprises, Inc., A.R.

Popple, Inc., Anthony R. Popple, Nancy A. Popple, and the Popple Partnership (collectively

"Defendants"). Plaintiff's Complaint states causes of action for breach of contract, replevin,

and attachment. Plaintiff filed the instant Motion for Summary Judgment against all

Defendants, except Nancy A. Popple. For the reasons set forth below, Plaintiff's Motion for

Summary Judgment will be granted.

## JURISDICTION

This matter is properly before the District Court pursuant to the Court's diversity

jurisdiction under 28 U.S.C. § 1332.

## BACKGROUND

Plaintiff asserts that Defendants, jointly and severally, entered into a Promissory Note ("Note 1") in the principal amount of $1,069,200.00 with Plaintiff. (*See* Pl.'s Compl. at ¶ 10, ECF Dkt. 1.) Plaintiff alleges that this sum was borrowed by Defendants for the purpose of refinancing preexisting debt. (*See* Pl.'s Compl. at ¶10.) To secure the debt on Note 1, Plaintiff perfected a security interest in several pieces of equipment: (a) one D9H Caterpillar Crawler Dozer, serial number ("s/n") 4751; (b) one D9H Caterpillar Crawler Dozer, s/n 4907; (c) one 3309 Terex Rear Dump, s/n T51039; (d) one 3309 Terex Rear Dump, s/n T51040; (e) one D9H Caterpillar Dozer, s/n 90V5165; (f) one 9020B Case Excavator, s/n DAC0202827; (g) one 52500 HD Indeco Hammer, s/n 3399; (h) one 9060B Case Excavator, s/n EAC0601056; (i) one TA40 Terex Articulated Dump, s/n A7771125; (j) one 330 Hitachi Excavator, s/n 1H1P022157; (k) one 450LC Hitachi Excavator, s/n 11136; (l) one D9H Caterpillar Dozer, s/n 90V6861; (m) one H55 Demag Excavator, s/n 11136; (n) one R50 Euclid Dump, s/n 201LD270; (o) one D9L Caterpillar Dozer, s/n 14Y1280; (p) one 773 Caterpillar Dump, s/n 63G2225; (q) one 773 Caterpillar Dump, s/n 63G2239; (r) one 550 Hitachi Excavator, s/n 17HP007114; (s) one 140G Caterpillar Grader, s/n 72V08741; (t) one 9060B Case Excavator, s/n EAC0601084; (u) one D65PX-15 Komatsu Dozer, s/n 67253; and (v) one D61PX-15 Komtasu Crawler Dozer, s/n B41155 (collectively, "Equipment # 1"). (*See* Pl.'s Compl. at ¶ 11.) In addition, Plaintiff also perfected a security interest in all "attachments, accessions and accessories to, and all proceeds of, all of

2

Equipment # 1, including without limitation all insurance proceeds and all rental proceeds, accounts and chattel paper arising out of or related to the sale, lease, rental or other disposition thereof;" and "all assets of the Defendants, Napcon, Popple and Enterprises, including any and all goods, inventory, equipment, accounts, accounts receivable, chattel paper, contract rights, general intangibles, investment property, securities entitlements, fixtures and other property wherever located, now or hereafter belonging to the Defendants, Napcon, Popple and Enterprises, or in which Defendants, Napcon, Popple and Enterprises, have and/or had any interest, and in all proceeds insurance proceeds, substitutions, replacement parts, additions and accessions of an/or to all of the foregoing (the "Additional Collateral") by executing a Security Agreement dated October 27, 2009 ("Security Agreement # 1")." (*See* Pl.'s Compl. at ¶ 11.) Plaintiff's "security interest in Equipment # 1 and the Additional Collateral were perfected by filing a Financing Statement with the Secretary of the Commonwealth of Pennsylvania on November 2, 2009." (*See* Pl.'s Compl. at ¶ 12.)

Plaintiff further claims that on or about January 28, 2010, "Defendants, Napcon, Popple and Enterprises, jointly and severally, entered into a Promissory Note ("Note 2") in the original amount of $220,032.00 with [Plaintiff] pursuant to which [Plaintiff] provided certain financing." (*See* Pl.'s Compl. at ¶ 13.) Plaintiff secured this debt with a perfected security interest in three more pieces of equipment ("Equipment #2") and all accounts or monies that could be connected to them (hereinafter, Equipment #1 and Equipment #2,

3

along with the Additional Collateral and all security agreements, constitute the "Loan Documents"). (See Pl.'s Compl. at ¶¶ 14-15.) The record indicates that Defendants Anthony Popple, Nancy Popple, and the Popple Partnership were guarantors to the transactions involving the Loan Documents, and granted Plaintiff "the right to hold any and all sums due to Guarantor." (See Guarantees, ECF Dkts. 1-7, 1-8, and 1-9.)

Plaintiff further maintains that Defendants are in violation of the conditions set forth in the Loan Documents, because Defendants do not maintain insurance policies on the collateral as required therein. Plaintiff further asserts that Defendants are in default because they have stopped making any payments toward the satisfaction of the Loan Documents, and have refused to surrender any of the collateral used to secure the Notes.

On March 13, 2012, the United States Marshals Service was ordered to seize all collateral used to secure the Loan Documents, but the warrant was returned unexecuted on March 27, 2012. The Loan Documents specifically require that the collateral used to secure the Loan Documents be maintained, insured, and delivered to Plaintiffs in the event that Defendants default on their obligations. Plaintiff claims that as of March 31, 2011, Defendants owe $1,095,562.70, plus interest, attorneys' fees, and costs of suit.

## STANDARD

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

4

fact and that the moving party is entitled to judgment as a matter of law." A district court

may grant a defendant's motion for summary judgment when the plaintiff fails to provide any

genuine issue of material fact. *See* Rule 56(c); *see also Krouse v. Amer. Sterilizer Co.*, 126

F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the burden to establish before the

district court that the non-moving party has failed to substantiate its claims with evidence.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see*

*also Country Floors, Inc. v. Partnership Composed of Gepner and Ford*, 930 F.2d 1056,

1061 (3d Cir. 1990). "The burden then shifts to the non-movant to come forward with

specific facts showing a genuine issue for trial." *See Book v. Merski*, 2009 WL 890469, at

*4 (W.D. Pa. Mar. 31, 2009)(citing *Matsushita Elec. Indus. Company v. Zenith Radio Corp.*,

475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Williams v. Borough of West Chester,*

*Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989)("the non-movant must present affirmative

evidence—more than a scintilla but less than a preponderance—which supports each

element of his claim to defeat a properly presented motion for summary judgment.")). The

non-moving party is then charged with providing evidence beyond the pleadings to show

specific facts by affidavit or by information contained "in the filed documents (i.e.,

depositions, answers to interrogatories and admissions) to meet his burden of proving

elements essential to his claim." *Book*, 2009 WL 890469, at *4 (citing *Celotex*, 477 U.S. at

322; *Country Floors*, 930 F.2d at 1061).

Material facts are those whose resolution will affect the outcome of the case under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the Court is required to resolve any doubts as to the existence of material facts in favor of the non-moving party for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." *Firemen's Ins. Company of Newark, N.J. v. Du Fresne*, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment, therefore, is only precluded if a dispute about a material fact is "genuine", *viz.*, if the evidence would permit a reasonable jury to return a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 247-249.

## DISCUSSION

Plaintiff seeks damages for breach of contract, in addition to replevin and attachment.

### I.    Breach of Contract

"Under Pennsylvania law, to establish a breach of contract a party must demonstrate (1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract, and (3) damages. *Amitia v. Nationwide Mut. Ins. Co.*, No. 08-335, 2009 WL 111578, at *3 (M.D. Pa. Jan. 15, 2009)(citing *Ware v. Rodate Press, Inc.*, 322 F.3d 218, 225 (3d Cir.2003)).

Defendants admit that they entered into the Notes, and further admit that they received consideration for Note 1. (*See* Def.s' Response to SMF, at ¶¶ 1-2.)[1] Plaintiff alleges that the Defendants are jointly and severally liable under the clear and express terms of the obligations of the Loan Documents. It is undisputed that Defendants borrowed money pursuant to the terms in the Loan Documents and have failed to make timely payments in accordance with their provisions. (*See* Def.s' Response to SMF, at ¶¶ 4-5.) Defendants assert, however, that they have not made timely payments for several reasons: (1) the products purchased from Plaintiff with the proceeds of the Loan Documents were defective; (2) the Popple Partnership is not bound under the Loan Documents; (3) the Loan Documents were signed under duress; and (4) the Loan Documents are defective because the individual notes do not specify the principal amounts of each loan or the applicable interest rates.

It is undisputed that both Plaintiff and Defendants entered into the agreements contained in the Loan Documents, although Defendants Nancy Popple and the Popple Partnership contend that the signature of Nancy Popple was forged by her husband, Anthony Popple. It is further undisputed that all Defendants ceased making the payments required therein (*see* Def.s' Response to SMF, at ¶¶ 4-5), and that the United States Marshals Service was ordered to seize the collateral Equipment used to secure the Notes, and that the seizure warrant was returned unexecuted after an exhaustive search.

---

[1] The reasons proffered by Defendants as to why they believe consideration was inadequate regarding Note 2 is addressed later in this Memorandum.

Defendants admit that they executed a series of Security Agreements in relation to the Notes, and that these agreements granted Plaintiff a security interest in all assets owned by Defendants, including but not limited to, the collateral listed in Plaintiff's Verified Complaint. (*See* Def.s' Response to SMF, at ¶¶ 8-10.) Defendants further admit that the Security Agreements did not permit the sale, pledge, assignment, rent, lease, destruction or transfer of any collateral, including the Equipment, by Defendants, and that any such actions would constitute default. (*See* Def.s' Response to SMF, at ¶11.) Defendants concede that they have sold, destroyed or otherwise transferred the collateral pledged to Plaintiff, including the Equipment. (*See* Def.s' Response to SMF, at ¶12.)

Accordingly, the Court finds that Defendants have breached their duty under the Loan Documents to make timely payments, and have failed to turn over the collateral used to secure the debt provided under the Loan Documents.

## II. Inapplicability of Defenses Asserted by Defendants

Defendants assert that they should not be bound to the Loan Documents because: (1) equipment allegedly purchased with the proceeds was defective; (2) the Popple Partnership was not a signatory to the Loan Documents and cannot be bound; (3) the Loan Documents were signed under duress; and (4) the terms of the Loan Documents were ambiguous. Each of these defenses is examined below, in addition to the Loan Documents' status as a negotiable instrument and Plaintiff's position as a "holder in due course."

8

## 1. Negotiability of Notes and Holder in Due Course Defenses

To be considered a negotiable instrument, a Note must meet the conditions imposed

by 13 Pa. C.S.A. § 3104:

> Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
> (1) is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
> (2) is payable on demand or at a definite time; and
> (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain:
>> i. an undertaking or power to give, maintain or protect collateral to secure payment;
>> ii. an authorization or power to the holder to confess judgment or realize on or dispose of collateral; or
>> iii. a waiver of the benefit of any law intended for the advantage or protection of an obligor.

13 Pa. C.S.A. § 3104(a).

With regard to the Notes executed among the parties to the present suit, the terms of

the Notes show that they are payable to the bearer, at a definite time, and that they did not

require any additional or supplemental undertaking which could compromise their

negotiability. Each Note is unambiguous that a specific sum, which includes pre-calculated

interest, will be paid to a specific holder, and done so at a specific time—that is, each Note

9

satisfied the requirements of negotiability as required under 13 Pa. C.S.A. § 3104(a). As a consequence, a forged signature can be ratified in accordance with 13 Pa. C.S.A. § 3403.[2]

Further, the holder of an instrument can be a "holder in due course," which "provides that the holder of an instrument has a right to enforce that instrument, subject to certain enumerated exceptions."[3] *State Street Bank & Trust Co. v. Strawser*, 908 F. Supp. 249, 252 (M.D. Pa. 1995). In *Bucci v. Paulick*, 419 A.2d 1255, 1258 (Pa. Super. 1980), the Pennsylvania Superior Court held that the payee of a note (who extended credit), and who was an original party to the transaction with the maker of that note, was not precluded from being a "holder in due course." *Id.* at 1258. The Superior Court did, however, find that the defenses ordinarily available to a "holder in due course" would not apply when the "holder in due course" was a party to the original transaction. The Superior Court held:

> We conclude that appellees, as parties to the underlying transaction out of which the execution of the note arose and, at the same time, payees on the note upon which the instant lawsuit was brought, even as holders in due course, are not free from a defense of any party (here the appellant-maker) with whom they have dealt. We therefore, conclude that the defense of failure of consideration, should have been available at trial to appellant/maker.

---

[2] 13 Pa. C.S.A. § 3403(a): "Unless otherwise provided in this division or Division 4 (relating to bank deposits and collections), an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this division."

[3] 13 Pa. C.S.A. § 3302: In order to be a holder in due course, the holder must take the instrument: "(i) for value; (ii) in good faith; (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (iv) without notice that the instrument contains an unauthorized signature or has been altered; (v) without notice of any claim to the instrument described in section 3306 (relating to claims to an instrument); and (vi) without notice that any party has a defense or claim in recoupment described in section 3305(a) (relating to defenses and claims in recoupment)."

*Bucci*, 277 Pa. Super. at 497.

Consistent with this holding, in the matter *sub judice*, Plaintiff qualifies as a holder in due course, but because it was a signatory to the original, underlying Loan Documents, it remains subject to defenses that could otherwise not be asserted against it as a holder in due course pursuant to 13 Pa. C.S.A. § 3302.[4] Such defenses can be raised because Plaintiff was an original party to the Loan Documents, and to the degree that Defendants assert such defenses, they are now addressed.

### a. Defective Equipment

Defendants assert that they should be relieved of any burden to repay the balances owed on the Loan Documents, or that they are entitled to a substantial credit, because several pieces of machinery allegedly purchased from Plaintiff were defective. Defendants assert that the funds provided by Note 1 were used to refinance existing debt and to purchase both a Komatsu Dozer and a Komatsu Crawler Dozer.[5] (*See* Def.s' Br. in Opp. Mot. Summ. J. at 6.) Defendants further assert that the funds provided by Note 2, in the form of purchase money financing, were used to purchase three pieces of Caterpillar equipment. (*See* Def.s' Br. in Opp. Mot. Summ. J. at 6.)

---

[4] Thus, this Court's finding of holder in due course status as limited by *Bucci, supra*, is consistent with the Court's determination that an issue of fact remains for trial with respect to the validity (i.e. whether forged, and if so, whether subsequently ratified), of the signature of Nancy Popple, the single Defendant not included in Plaintiff's Motion for Summary Judgment.

[5] Defendants' Response to Plaintiff's Statement of Material Facts, ECF Dkt. 24, indicates that Defendants admit to the purchase of a Komatsu D 65 PX-15 Dozer and a Komatsu B61 PX-15 Crawler Dozer with some of the proceeds of Note 1.

At the outset, neither Note 1 nor Note 2 specified any condition that could provide a justifiable reason for Defendants to withhold timely payments. The Notes clearly demonstrate that "[f]or value received," Defendants would "pay to the order of" Plaintiff, specific amounts at designated times. The Notes do not make any reference to any particular product to be purchased with the proceeds of the Notes, nor do they contain any language that would permit Defendants to argue that repayment was conditioned upon Defendants obtaining any benefit aside from money lent to them and memorialized by the Notes and Security Agreements. Thus, Defendants cannot claim that they were entitled to any benefit beyond that conveyed by the plain language of the Notes.

Further, the Notes were executed in conjunction with Security Agreements that secured the Notes with tangible property including trucks, bulldozers, and various other types of construction equipment, with Defendants' obligations under the Notes being "secured by any security agreement . . . executed by Maker in favor of Holder. . . ." (See Note 2, at 3, ECF Dkt. 1-17.) Nothing in the Notes, or the Security Agreements, indicates that payment on the Notes was conditioned upon Plaintiff performing any task or fulfilling any promise or guarantee beyond issuing the funds as consideration for the Notes. Both the Notes and the Security Agreements were further executed each in conjunction with a separate "Acknowledgment of Delivery/Installation" ("Acknowledgments"). See Acknowledgements of Delivery/Installation, ECF Dkt. 25-7, 25-11. These Acknowledgments, signed by Defendants, specifically contain warranty exclusions

12

"regarding the Property described in the [Security Agreements], whether express, implied or statutory." *Id.* at ¶ 2. The Acknowledgments further state that Defendants "fully understand that any deficiency, failure or misoperation of any Property or any delay, deficiency or failure of any service or warranty work shall not be an excuse for any non-fulfillment, delay or reduction of [Defendants'] obligations under the [Security Agreements]." *Id.* at ¶ 3. The warranty disclaimers were fully integrated with the Security Agreements, were unambiguous, and acknowledged that Defendants "have knowledge, ability, experience and capacity to evaluate the risks of the transaction." *Id.* at 5. Accordingly, Defendants accepted any products allegedly purchased with funds under the Notes and Security Agreements without warranties of any kind, and attested to the fact that they understood any such limitations.

In addition, several pieces of machinery allegedly purchased with funds provided under the Notes contained specific warranty disclaimers. With regard to Note 2, only one of the Caterpillar trucks was purchased from Plaintiffs, and that CAT D400D Dump Truck contained unambiguous warranty language in the bill of sale. The bill of sale makes clear that the purchase was made: "AS-IS, WHERE-IS, IF-IS, WITHOUT ANY REPRESENTATION OR WARRANTY, EXPRESSED, IMPLIED, OR STATUTORY, AND SPECIFICALLY DISCLAIMING ANY WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE." (*See* Bill of Sale, ECF Dkt. 25-2 (emphasis in original).) The same warranty disclaimer was included in the Bills of Sale for both the

13

Komatsu D65PX-15 Dozer and the Komatsu D61PX-15, which Defendants claim were secured by Note 1. (*See* Financial Federal Credit, Inc., Bills of Sale, ECF Dkt. 25-10, 2-3.)

Further, the second two Caterpillar 730 Articulated Dump Trucks allegedly purchased with proceeds from Note 2 were purchased from a third-party, Team Equipment, LLC, who is not named in the present suit. The Bill of Sale for those transactions indicates that the seller is Team Equipment, LLC, and that the buyer is Napcon, Inc. (*See* Team Equipment Bill of Sale, ECF Dkt. 21-2.) Plaintiff had no part in those sales, and at most, held those Caterpillar trucks as collateral to secure a Note that did not contain any language indicating that the purpose of the funds provided was to buy particular equipment. All of this equipment, regardless of its seller, was purchased without express warranty provisions. (Financial Federal Credit, Inc., Bill of Sale, ECF Dkt. 25-10.) Further, the Acknowledgments signed by Defendants re-confirm that no warranties attached to any product described in the Security Agreements.[6] (*See* Acknowledgments, ECF Dkt. 25-7, 25-11.)

In Pennsylvania, a conspicuous writing is required to modify an implied warranty of merchantability. *See* 13 Pa. C.S.A. § 2316(b). A term or clause is conspicuous when it is written so that a reasonable person against whom it might operate ought to have noticed it. *See* 13 Pa. C.S.A. § 1201. Language or type-written words in the body of a contract or form are conspicuous if they are in larger or other contrasting type or color. *See* 13 Pa. C.S.A. § 1201. Whether or not a term is conspicuous is a decision to be made by the Court. *See* 13

---

[6] *See also* Def.s' Response to SMF, at ¶24, in which Defendants admit that they purchased one of the three pieces of Equipment without warranties.

Pa. C.S.A. § 1201. Further, the sale of goods "as is" will exclude all implied warranties. *See* 13 Pa. C.S.A. § 2316(c)(1).

In the present matter, every piece of equipment involving Note 1 was sold with a warranty disclaimer and each bill of sale specifically stated that the equipment was sold "as is." Further, Plaintiffs already negotiated with Defendants and received a credit of $53,370.72 against its obligations under Note 2 for the allegedly defective equipment. These funds were provided after Plaintiff "agreed to charge back Team Equipment," and applied a credit to Defendants' accounts. (*See* Pl.'s Br. in Supp. Mot. Summ. J. at 5, ECF Dkt. 26.) Anthony Popple testified at his deposition that he personally negotiated the credit with Plaintiff. (*See* Anthony Popple Dep. Tr. at 114-115, ECF Dkt. 21-1.) This fact alone does not provide evidence to support Defendants' claim that Plaintiff sold any piece of defective machinery to Defendants.

Finally, Defendants fail to provide any evidence whatsoever to document that any equipment allegedly provided by Plaintiff was damaged, inoperable, needed substantial repairs, or would not serve the purposes for which it was purchased. Beyond Defendants' mere assertions that several pieces of machinery were damaged, the record does not contain a scintilla of evidence to show that any product was damaged; thus, under the applicable summary judgment standard, there is no issue of material fact as to whether Plaintiff sold Defendants defective equipment, and Defendants provide an inadequate defense against Plaintiff's claim for breach of the Loan Documents. *See Fireman's Ins. Co.*

*of Newark, N.J.,* 676 F.2d at 969 (non-moving party may not "rely merely upon bare

assertions, conclusory allegations or suspicions" to support its claims).

Accordingly, as a matter of law, Defendants are not entitled to any offset on the

Notes because of allegedly defective equipment, nor are Defendants entitled to disclaim

their responsibilities under the Loan Documents.

### b. Liability of the Popple Partnership

Defendants maintain that the Popple Partnership is not bound by the Loan

Documents as a guarantor because Nancy Popple did not sign the Guarantee in her

capacity as a general partner, and that the signatures affixed to the Guarantees were

forgeries provided by her husband, Anthony Popple. Nevertheless, under the undisputed

facts of this case, the legality of Nancy Popple's signature is irrelevant to the question of any

liability which may run to the Popple Partnership.

Pennsylvania's Partnerhsip Code provides:

(a) **General rule.--**Every partner is an agent of the partnership for the purpose of its business and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership unless the partner so acting has in fact no authority to act for the partnership in the particular matter and the person with whom he is dealing has knowledge of the fact that he has no such authority.
(b) **Absence of apparent authority.--**An act of a partner which is not apparently for the carrying on of the business of the partnership in the usual way does not bind the partnership unless authorized by the other partners.
(c) **Limitations on authority of individual partners.--**Unless authorized by the other partners or unless they have abandoned the business, one or more but less than all the partners have no authority to:

(1) Assign the partnership property in trust for creditors or on the promise of the assignee to pay the debts of the partnership.

(2) Dispose of the goodwill of the business.

(3) Do any other act which would make it impossible to carry on the ordinary business of a partnership.

(4) Confess a judgment.

(5) Submit a partnership claim or liability to arbitration or reference.

**(d) Effect of knowledge of restriction.--**No act of a partner in contravention of a restriction on his authority shall bind the partnership to persons having knowledge of the restriction.

15 Pa. C.S.A. § 8321.

Thus, in order to bind a partnership to obligations incurred through a partner

regarding affairs outside the scope of the usual business of the partnership, all general

partners must consent. See *Jamestown Banking Co. v. Conneaut Lake Dock & Dredge*

*Co.*, 14 A.2d 325, 328 (Pa. 1940)("But for a transaction not in the ordinary court of business

a partner has no implied authority to bind his firm."). Both Notes contain the following

provisions:

> The proceeds from the loan evidenced by this Note are to be used for business purposes only, and no part thereof is to be used for primarily consumer, personal, family or household purposes. Maker acknowledges and agrees that Maker's obligations hereunder shall be secured by any security agreement, mortgage, deed of trust or pledge executed by Maker in favor of Holder, whether now existing or hereafter executed.

Note 1, ECF Dkt. 1-2; Note 2, ECF Dkt. 1-17.

According to the specific language of the Notes, all proceeds provided under the

Notes were to be used for business purposes only. But the Notes do not specify a particular

business purpose for which the proceeds must be used and do not prohibit Defendants from

17

using such proceeds, in whole or in part, for the benefit of the Popple Partnership, which was also a signatory to the Loan Documents as a result of Anthony Popple's signature on the guarantees. The Popple Partnership does not need the approval of all general partners to be bound to agreements made in connection with its ordinary course of business. A loan document, to which a general partner affixed his signature, and the proceeds of which were not allocated for or to a specific business purpose or entity, can be binding when signed by a single general partner. The Popple Partnership became bound to the Loan Documents when Anthony Popple signed the Guarantees on its behalf, and such an action was not *ultra vires* because the terms of the Guarantees and Loan Documents do not restrict the use of funds to any particular business entity or any business purpose. The Makers of the Notes were only restricted from employing the funds for personal, household, family, or consumer use. Defendants were not restricted by the terms of the Notes from using the funds for business purposes which they judged appropriate, including the use of those funds for the business operations of the Popple Partnership.

With regard to Nancy Popple in her personal capacity, Anthony Popple asserts that he forged his wife's signature, and that she was unaware of his actions. Although Defendants provide a troubling, possibly criminal, defense, there is a question of fact as to whether Nancy Popple signed the documents, and if she did not, there is yet another question of fact as to whether she ratified her signature. However, such a factual

determination is necessary only for the purpose of extending liability to Nancy Popple as an individual. Such a question is outside the scope of the present motion.

Accordingly, the Court holds as a matter of law that the Popple Partnership is, as a guarantor of the proceeds provided under the Loan Documents to Napcon, Inc., Napcon Enterprises, Inc., and A.R. Popple, Inc., bound to the terms of the Loan Documents. The question and extent of Nancy Popple's liability, if any, remains a question for a jury.

### c. Economic Duress

To the extent that Defendants allege that they should be excused from performing under the terms of the Loan Documents because those documents were signed while Defendants were experiencing economic duress, such argument fails as a matter of law. Economic duress, also known as business compulsion, is a variant of duress theory that is recognized under Pennsylvania law. See National Auto Brokers Corp. v. Aleeda Dev. Corp., 364 A.2d 470, 473-474 (Pa. Super. 1976). "The important elements in the applicability of the doctrine of economic duress or business compulsion are that (1) there exists such pressure of circumstances which compels the injured party to involuntarily or against his will execute an agreement which results in economic loss, and (2) the injured party does not have an immediate legal remedy." Litten v. Jonathan Logan, Inc., 286 A.2d 913, 917 (Pa. Super. 1971).

In addition, "[t]o constitute duress or business compulsion there must be more than a mere threat which might possibly result in injury at some future time, such as a threat of

injury to credit in the indefinite future. It must be such a threat that, in conjunction with other circumstances and business necessity, the party so coerced fears a loss of business unless he does so enter into the contract as demanded." *Nat'l Auto Brokers Corp.*, 364 A.2d at 474. "Of course, another essential element is that the party against whom the defense of duress is asserted must have placed the contracting party in the position which eliminated the party's exercise of free will." *Academy Elec. Contractors, Inc. v. Nasson and Cullen Group, Inc.*, No. 03252, 2004 WL 95181, *2 (Ct. Comm. Pl., Phila. County, Jan. 14, 2004)(citing *National Auto Brokers Corp.*, 364 A.2d at 473-474).

In the present matter, it is clear that Defendants needed the funds provided by the Loan Documents, and that much of that money was marked for refinancing purposes. Such facts, however, in themselves, do not constitute economic duress. Defendants must show that they lacked free will, were essentially forced into accepting the Loan Documents, and that they did not enter into the agreements voluntarily. The record indicates that Defendants are sophisticated business persons (*see* Acknowledgment of Delivery/Installation, October 29, 2009, ECF Dkt. 25-11),[7] and that they not only accepted the terms and benefits of Note 1, but that they voluntarily returned to Plaintiff for additional funds as evidenced by Note 2. Nothing in the record indicates that Defendants were placed

---

[7] *See also* Defendants' Response to Plaintiff's Statement of Material Facts at ¶ 21, in which Defendants admit that they understood the terms of each loan transaction, including the amount borrowed, interest rate and payment terms. Defendants merely assert that the Notes did not "specify the principal amount of the borrowing or the interest rate."

in a difficult position, or were otherwise manipulated by Plaintiff into accepting the terms of the Loan Documents involuntarily.

The Third Circuit has noted that "[i]t is well settled that merely because one enters into an agreement which he would not enter if he did not need the money there is not such duress as will void the contract." *Lawlor v. Nat'l Screen Serv. Corp.*, 211 F.2d 934, 937 (3d Cir. 1954), *rev'd on other grounds*, 349 U.S. 322, 75 S.Ct. 865, 99 L.Ed.1122 (1955). The doctrine of economic duress does not absolve individuals or entities from contractual obligations because those individuals or entitles entered into a contract that they would otherwise have not engaged if their financial position was more "secure." *See Harrison v. Fred S. James, P.A., Inc.*, 558 F. Supp. 438, 443 (E.D. Pa. 1983). In the present matter, aside from Defendants bare assertion of duress, there is nothing in the record to support a finding that the Loan Documents were executed under duress. Accordingly, Defendants defense of duress fails as a matter of law.

### d. Specificity of Terms in the Loan Documents

Defendants assert that the terms of the Loan Documents are unclear with regard to the principal amount borrowed and the applicable rates of interest, and that as a result of such alleged ambiguity, Defendants can avoid their contractual obligations under the Loan Documents. For the reasons provided earlier in this Memorandum holding that the Loan Documents are negotiable instruments, Defendants' argument must fail.

The Loan Documents, including the applicable promissory Notes, have been incorporated into the record. The Notes do not contain the original principal amount of the loans, nor do they contain an explicit interest rate; nevertheless, such terms are not required in order to constitute a binding agreement as the total value of each Note is listed on each. See 13 Pa. C.S.A. § 3104 ("fixed amount of money, with or without interest or other charges" is a necessary component of a negotiable instrument). Further, the Notes contain payment schedules in which a monthly payment of a specific amount is detailed. This monthly payment includes the principal and all interest, and satisfaction of the monthly payments constitutes a satisfaction of all obligations under the Notes. Defendants made payments toward the satisfaction of the Notes, but ceased making payments and are now in default.

The language contained in each Note makes clear the total amount owed on each Note, and that interest was included in the calculation, the combined product of which was the total value of the note. The total amount of Note 2, for instance, is $220,032.00, inclusive of all pre-computed interest. Note 2 specifically instructed that Defendants make monthly payments at a rate of $6,112.00, commencing on March 1, 2010, and that they were to be timely made in order to satisfy the repayment terms for 36 consecutive months. Late penalties and additional interest, in addition to the acceleration of payment of the entire Note, were further permitted in the event of default.

Similarly, the total amount owed to Plaintiff under Note 1 was $1,069,200.00, inclusive of all pre-computed interest. Note 1 specifically instructed that Defendants make monthly payments at a rate of $22,275.00, commencing on December 1, 2009, and that they were to be timely made in order to satisfy the repayment terms for 48 consecutive months. Late penalties and additional interest, in addition to the acceleration of payment of the entire Note, were further permitted in the event of default.

Defendants accepted the funds provided under the Loan Documents, and do not provide any evidence that they objected to the terms. See In re Rothman, 204 B.R. 143 (E.D. Pa. 1996)("if after [a] corporation is incorporated, it accepts the benefit of [a] contract in question, the corporation 'will be required to perform its obligation'"). In the matter presently before the Court, Defendants accepted the benefits of the promissory notes in the form of substantial sums of money, and are thus required to perform their end of the bargain.

Defendants agreed to the amounts loaned and to be repaid as specified in two separate Notes: one for $1,069,200.00 and a second for $220,032.00. Those two figures appear on the respective Loan Documents, and both Notes contain specific details regarding repayment, including the fact that interest was pre-calculated and constituted an element of the total value of each Note. Defendants cannot reap the benefit of the funds paid to them, or on their behalf to others, pursuant to the Loan Documents while now eschewing any responsibility they have to repay funds provided to them in the loan